Battle, J.,
Disserting. The pleadings show that the will of the testator was made on the 5th day of August, 1857, and that he died on the 13th day of June, 1861. This will purported to emancipate certain ‘of his slaves, who are the present complainants, and then proceeds to give “ to the above-named liberated slaves ” both land and money. ’ The question presented for consideration is, whether under the circumstances the complainants can take this land and money.
It is admitted that the bequest for emancipation is void by force of the act of 1860, ch. 37,- that being settled by the decision of this court in Mordecai v. Boylan, 6 Jon. Eq., 366. The status of the complainants as slaves remained then un *188 changed at the death of the testator in 1864, unless their emancipation was effected in some other mode. Their counsel contend that it was effected by the proclamation of the President, of the 1st day of January, 1863; not by virtue of any civil authority conferred upon him by the Constitution, but as commander-in-chief of the armies of the United States. In this capacity it is said that he had the right to set the slaves in the revolted States free, as an incident to the war power and as one of the means of suppressing- the revolt. This proposition may be viewed in two aspects; and in neither of these can it be maintained. First, if the States which formed the Southern Confederacy had no rig-ht to secede from the Union, their attempt to do so and to maintain their acts by force, was a rebellion, and in employing means for the suppression of that, the President was acting-under the sanction of the Constitution, and had no rig-ht to violate any of its provisions. The Constitution recognizes the fact that there may be insurrections, and points out the means by which they may be suppressed, and among these the abolition of slavery is not comprehended. Secondly, if secession was lawful, and the seceding States rightfully established the Confederate Government, so that the war which ensued became a foreign war, even then the proclamation of the President could not have had the effect to set free any other slaves than those which came under the control of the armies of the United States. This seems to be settled as the law of nations. See Dana’s Wheat, on Int. Law, Note 8, to sec. 347. See also the opinion of Judge Sheffey, of Virginia, in the case of Walker v. Loving. It is admitted that the complainants were never under tbe control of the Federal forces before the death of their master, but on the contrary remained with him until that event, serving him apparently as they had done before the commencement of the war. I conclude, therefore, that they were his slaves at the time of his death.
*189 Supposing this to he established, the complainants still contend that as they have since-become tree, either as one of the results of the war or by force of an ordinance of the State Convention of 1865, they can claim under the will of their master as executory devisees and legatees. The argument is, that as the will of the testator speaks as at the time of his death, (See Rev. Code, c. 119, s. 6,) as he kept it by him unaltered, and as he must have been aware of passing events, he must have had in contemplation the event of the emancipation of his slaves .as being probable, and that therefore the language he uses must be construed with reference to, and by the light of all the circumstances by which he was surrounded. Hence, it is concluded that the devises and bequests to the complainants are all executory in their character, and that the event upon which they were intended to become vested, was not so remote as to come within the rule against perpetuities.
This argument is very ingenious, and I would be willing to give effect to it, if it did not, in my opinion, violate one of the most firmly established rules relating to devises and bequests. . This rule is, That where there is a bequest to the children of a particular person, and there is no life estate given in the meantime, and the time for a division is not postponed to a certain period after the death of the testator, only the children born at the testator’s death can take. Shinn v. Motley, 3 Jon. Eq., 490. It is true, indeed, that if the testator use words that can be made to embrace future children, such for instance, as children “ which now are or hereafter may be,” or “ which might be living at or after his decease,” they may take, Ibid, Shull v. Johnson, 2 Jon. Eq., 202; Defliss v. Goldsmith, 1 Mer., 417; Scott v. Lord Scarborough, 1 Beav., 154, (17 Con. Ch. Rep., 154.) It being thus the rule with regard to a bequest to the children of a living person that those only can take who are born, or are in
*190 ventre sa mere at the death of the testator, why will not the same rule apply to a bequest to liberated slaves? Why should those who may become free after the testator’s death be allowed to take any more than future born children? The language of the will, in the case at bar, is very explicit in giving the testator’s land and money to his “liberated slaves,” and not to those “ who now are or hereafter may be liberated,” or “which might be liberated at or after his decease.” Had the testator made a bequest to the children of one of his living brothers, it would seem to me to be a strange incongruity to exclude the future born children, and let in the after liberated slaves, in the construction of similar language. The hardship of excluding the post obit freedmen is not greater than that of excluding the post obit children. It will be seen that I have not laid any stress in my argument upon the fact that the slaves were not emancipated in the manner contemplated by the will. I admit that if the language employed by the testator to express his wishes with regard to his slaves could be construed to embrace a future post obit emancipation, then it would make no difference how that emancipation was accomplished. But I cannot admit that such words used by a testator as cannot include children born after the testator’s death, in a bequest to children, may include slaves liberated after his death in a bequest to liberated slaves. The cases of Pandine v. Hubert, 14 La. 161; Woodruff’s Succession, Ibid, 295, and Deshotels v. Soilean, Ibid, 754, cited by the counsel for the defendants, were decided upon a statute of Louisiana similar to our act of 1860, ch. 37, and they tend to confirm the construction which we have adopted in relation to our act, and show that the status of the slaves intended to be emancipated by the testator remained unchanged at the time of his death. As slaves, they were incapable of taking a devise or bequest under his will at that time, and I cannot *191 discover any tiling- in the language of the will to justify me in holding- that there is a provision for a future emancipation. My opinion therefore is, that the disposition of the land and money mentioned in the will to the compláinants is null and void.
Per Curiajt.
Decree for the complainants.